UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| JACOB MARSHALL, | Case No. 3:22-cv-01928-AR |
| Plaintiff, | **FINDINGS AND RECOMMENDATION** |
| v. | |
| HIPCAMP, INC., *a Delaware corporation*; STEVEN EPLING, *an individual*; and GO RIVER, LLC, *a Washington limited liability company*, | |
| Defendants. | |

**ARMISTEAD, Magistrate Judge**

Plaintiff Jacob Marshall was injured at a Stevenson, Washington campsite owned by defendant Steven Epling, who managed the property on which the campsite was located through his company defendant Go River, LLC. The campsite was booked by Marshall's girlfriend, Andrea Mitchell, using the online website Hipcamp. Defendant Hipcamp, which is incorporated in Delaware and headquartered in San Francisco, California, moves to dismiss Marshall's

Page 1 – FINDINGS AND RECOMMENDATION

complaint on the basis that this court lacks personal jurisdiction. FED. R. CIV. P. 12(b)(6). To determine whether a court has personal jurisdiction over an out-of-state defendant, *i.e.*, specific jurisdiction, the court applies the three-part minimum contacts test the Ninth Circuit has set out. Hipcamp has met its burden of establishing the third part of that test. That is, litigating this case in Oregon—given that almost all Marshall's claims concern alleged negligence and a dangerous condition with respect to Epling and Go River's Washington campsite—would be unreasonable. The court therefore recommends GRANTING Hipcamp's Motion to Dismiss. (Mot. to Dismiss, ECF No. 5.) The court also recommends transferring the case to the Western District of Washington.[1]

## BACKGROUND

On May 8, 2021, at about 11:30 p.m., Marshall, who was camping on Epling's land in Stevenson, Washington, got out of his tent to relieve himself. After taking a few steps in the dark, Marshall fell down an 80-foot cliff. (Compl. ¶ 16, ECF 1.) As a result of the fall, among other injuries, Marshall broke ribs, a clavicle, and a vertebra; his lung partially collapsed; a tendon in his thumb tore; and he cut his head. The fall also caused anxiety and depression. (*Id.*)

---

[1] Hipcamp contemporaneously moves to compel arbitration, arguing that the arbitration agreement contained in its terms of use are binding. (Mot. to Compel Arb. at 5, ECF No. 6.) Because a district court must have personal jurisdiction over the parties before compelling them to arbitrate, personal jurisdiction is necessarily discussed first. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-32 (2007); *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019) ("The district court must have personal jurisdiction over each individual third-party entity before compelling them to arbitrate." (citing *id.*)). In this case, because the court concludes that it lacks personal jurisdiction and recommends transferring the case to the Western District of Washington, it does not address the Motion to Compel.

Page 2 – FINDINGS AND RECOMMENDATION

The campsite where Marshall fell was booked by Mitchell on Hipcamp's website while she was in Oregon on May 3, 2021. (*Id.* ¶¶ 1, 8, 11.) Hipcamp offers an online platform that connects hosts who rent campsites on their land with prospective campers, much like Airbnb connects owners of houses and rooms with prospective guests. (Decl. of Wilson Ex. 6 at 2, ECF No. 11.)  Hipcamp's hosts use its website or app to list campsites on their land, and Hipcamp collects a 10 percent commission from each booking. (*Id.; id.* Ex. 4 at 1.) Prospective campers can search for and directly book on Hipcamp's website and mobile app rural campsites offered by hosts. (*Id.* Ex. 2 at 2.) Along with providing and maintaining a platform, Hipcamp offers hosts a $1 million liability insurance policy and collects state and county occupancy taxes from bookings. (*Id.* Ex. 2 at 8.) After Hipcamp's online platform became available in Oregon in 2018, it began using online advertisements stating that landowners can "[e]arn up to $2,777/month hosting in Oregon." (*Id.* Ex. 6 at 2, Ex. 2 at 1.) Hipcamp's popularity has grown in Oregon, and it currently offers between 341-543 campsite listings. (Pl.'s Resp. at 3., ECF No. 10.) Hipcamp, a Delaware corporation with its principal place of business in San Francisco, California, does not have any bank accounts or a business license in Oregon.[2] (Compl. ¶ 2, ECF No. 1; Decl. of Strubbe, ECF 13.) Nor does it send its California-based employees to Oregon for business purposes. (Decl. of Strubbe.)

---

[2]  The parties do not contest the facts for deciding personal jurisdiction and the court has not held an evidentiary hearing. The summary of facts is taken from Marshall's complaint and declarations in the parties' motions concerning personal jurisdiction. *See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) (stating that if the court rules on a motion to dismiss for lack of personal jurisdiction without first holding a pretrial evidentiary hearing, the plaintiff is only required to establish, through pleadings and affidavits, "a prima facie showing of [personal] jurisdiction").

Page 3 – FINDINGS AND RECOMMENDATION

Anyone who creates a Hipcamp account must agree to its terms of use. (Mot. to Dismiss at 5, ECF No. 5.) Those terms include consent to California law, waiver of the right to bring a class action suit, consent to binding arbitration, and a general release of liability for Hipcamp. (*Id.* Ex. 3.) The terms ask users to "please regularly check the website to view the then-current terms." (*Id.* Ex. 3 at 1.)

On November 14, 2022, Marshall filed this action in Multnomah County Circuit Court asserting negligence and gross negligence by defendants. (Compl. ¶¶ 19-23.) Seven allegations asserted by Marshall concern the campsite itself and its dangerousness. The remaining allegation relates to Hipcamp's online platform: defendants were negligent or grossly negligent in "encouraging, promoting, and/or allowing the use of the Property and the Camping Site, including the use of the same up to and over the cliff on the Camping Site." (Compl. ¶¶ 19(c).) This action was removed to this court on December 13, 2022. (ECF No. 1.) On December 16, 2022, Hipcamp moved to dismiss this action for lack of personal jurisdiction.

## LEGAL STANDARD

In a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of proving that the court's exercise of jurisdiction is proper. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When resolving a motion on written materials, rather than after an evidentiary hearing, the court need "only inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id.* (quotation marks omitted). Although a plaintiff may not rest solely on the bare allegations of the complaint, uncontroverted allegations must be taken as true. Conflicts between the parties over statements in affidavits must be resolved in the plaintiff's favor. *Id.*

# DISCUSSION

Hipcamp asserts that this court lacks personal jurisdiction because it took no action availing itself of Oregon law and Marshall's claims result from activities in Washington. Marshall responds that this court has general and specific personal jurisdiction over Hipcamp because of its extensive activities in and connections to Oregon.

A court without personal jurisdiction lacks lawful judicial authority. *Burnham v. Superior Ct. of Cal., Cnty. of Marin*, 495 U.S. 604, 609 (1990). Unless a federal statute governs personal jurisdiction, a district court applies the law of the forum state. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Oregon's long-arm statute, ORCP 4(L), authorizes personal jurisdiction over defendants to the full extent permitted by the United States Constitution. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). This court therefore determines whether its exercise of personal jurisdiction over Hipcamp satisfies constitutional due process requirements. *Id*.

Due process requires that the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation and citation omitted); *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). The Supreme Court has rejected the application of "mechanical" tests to determine personal jurisdiction. *Int'l Shoe*. at 319; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). Rather, a court should consider the "quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." *Int'l Shoe*, 326 U.S. at 319.

"There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant—general jurisdiction and specific jurisdiction." *Boschetto*, 539 F.3d at 1016. A court has general personal jurisdiction over a defendant whose contacts with the forum are "so continuous and systematic as to render [it] essentially at home in the forum [s]tate." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 503 (9th Cir. 2023) (quoting *Goodyear Dunlop Tires Operations, S.A v. Brown*, 564 U.S. 915, 919 (2011)). If the court lacks general personal jurisdiction, it may have specific personal jurisdiction if the defendant has certain purposefully established minimum contacts with the forum state. *Burger King*, 471 U.S. at 472-74.

A.     *General Personal Jurisdiction*

General personal (also known as all-purpose) jurisdiction permits a court to hear "any and all" claims brought against a defendant. *Goodyear*, 564 U.S. at 919. A court may not assert general personal jurisdiction over an out-of-state defendant unless the defendant's contacts with the forum state "are so 'continuous and systematic' as to render [it] essentially at home in the forum [s]tate." *Id.* In determining whether a nonresident defendant's contacts are substantial or continuous and systematic, the court considers the defendant's "[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1224 (9th Cir. 2011) (citation omitted). The locations where general personal jurisdiction over a corporation considered most often appropriate are its place of incorporation and its principal place of business. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). "Only in an 'exceptional case' will general

jurisdiction be available anywhere else." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (citing *Daimler*, 571 U.S. at 139 n19).

Hipcamp is not incorporated in Oregon, nor is its principal place of business in Oregon. Marshall, arguing that this is an exceptional case to support this court's general personal jurisdiction over Hipcamp, advances several instances of Hipcamp's activities or involvement in Oregon (among other things, soliciting business, entering into contracts with Oregon residents, and offering Oregon campsites) to support his contention that Hipcamp has engaged in continuous and systematic activities within Oregon. Those activities are not enough to render Oregon as a home state so that any claim, even if it is unrelated to Hipcamp's activities within the state, subjects Hipcamp to personal jurisdiction in this district. So the court rejects Marshall's assertion that this is an exceptional case and concludes that it is without general personal jurisdiction over Hipcamp.

**B.** *Specific Personal Jurisdiction*

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Walden v. Fiore*, 571 U.S. 277, 287 (2014)). "[T]he relationship must arise out of contacts that the defendant *himself* creates with the forum State." *Walden*, 571 U.S. at 284 (quotation marks omitted; emphasis in original). The analysis also must look to the defendant's contacts with the forum state itself, and not with the defendant's contacts with persons who reside there. *Id.* at 285.

The Ninth Circuit applies a three-part test, commonly referred to as the minimum contacts test, to determine whether the exercise of specific jurisdiction over a nonresident defendant is appropriate:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603 (9th Cir. 2018) (quoting *Schwarzenegger*, 374 F.3d at 802). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger*, 374 F.3d at 802. If the plaintiff meets that burden, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King*, 471 U.S. at 476-78).

### 1. Hipcamp's purposeful availment

The first step of the specific jurisdiction analysis depends on the nature of the underlying claim. *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007). Both Marshall and Hipcamp agree that the purposeful availment standard applies, given that the claims involve unintentional torts. *See id.* (noting that when the underlying claims involve contract or unintentional tort claims, the purposeful availment analysis controls).

A defendant has purposefully availed itself of the privilege of conducting activities in the forum if it has "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir.

1990) (quotation and citation omitted). Merely "random, fortuitous, or attenuated" contacts are not sufficient. *Burger King*, 471 U.S. at 475. "[E]valuation of the jurisdictional significance of a defendant's contract or other business in the forum is not rigid and formalistic, but rather practical and pragmatic." *Boschetto*, 539 F.3d at 1016 (citing *Burger King*, 471 U.S. at 478).

Hipcamp's online platform and advertising in Oregon suffice to establish that it purposefully availed itself of the privilege of conducting activities in Oregon. To begin with, Hipcamp's presence in Oregon is significant with its hosted campsites. Hipcamp offers between 341-543 campsite listings. According to Hipcamp's website, an Oregon host can earn up to $2,777 monthly. Hipcamp—through its online platform—takes a commission from its Oregon hosts, processes a payment fee, provides hosts support in collecting appropriate state and county occupancy taxes, and offers a $1 million insurance policy. As for potential campers, Hipcamp's website is highly interactive as it permits searching for potential campsites within parameters set by the user, booking and paying for campsites, and entering into contractual agreements with Hipcamp. *See Boschetto*, 539 F.3d at 1018 (citing *Cybersell, Inc., v. Cybersell, Inc.*, 130 F.3d 419 (9th Cir. 1997), to note that nature and quality of commercial activity over the internet affects likelihood of personal jurisdiction).[3] Insurance, taxes, tort liability, sales, internet transactions, and contracts are all activities that implicate or potentially implicate Oregon law. Hipcamp argues that, because the choice of law provisions in its terms designate California law as controlling, it has not availed itself of Oregon's laws and protections. But the breadth of its

---

[3]   Hipcamp, citing cases outside the Ninth Circuit, casts doubt on the *Zippo* sliding scale invoked in *Cybersell, Inc.* The court's analysis includes all of Hipcamp's involvement in Oregon, not just its interactive website, and although the website is relevant, it is not the sole basis for the court's conclusion that Hipcamp has purposefully availed itself of the privilege of conducting activities in Oregon.

Page 9 – FINDINGS AND RECOMMENDATION

commercial involvement in Oregon extends beyond disputes that are potentially controlled by its terms of use—the terms are not so encompassing in their scope that they excuse Hipcamp entirely from the reach of Oregon law.

Further, Hipcamp's involvement in Oregon is not accidental. Hipcamp took measures in Oregon to promote its business. Those measures include Oregon-specific advertising and Hipcamp's CEO giving interviews to Oregon-based media. (*Id.* Ex. 2 at 1, Ex. 5, Ex. 6.) For example, Hipcamp's CEO stated that "whenever we expand somewhere new, it is just, pick up the phone and do the hard work of reaching out and building relationships." (Decl. of Wilson Ex. 5 at 15.) After Hipcamp began marketing Oregon campsites on its platform in 2018, it has seen "tremendous growth" in Oregon. (*Id.* Ex. 5 at 23.) Although campsite listings in Oregon may be viewed on the platform from anywhere, Hipcamp's Oregon-specific marketing efforts and focus on expanding in Oregon evince an intent to serve Oregon's market.

In Hipcamp's view, it is merely fortuitous that Mitchell happened to book the campsite in Oregon. The court disagrees. Hipcamp's contacts with Oregon (as noted above, its Oregon campsite listings, interactive website, and marketing efforts) are not the type of "random, fortuitous, or attenuated" contacts over which a defendant has no control. *See Walden*, 571 U.S. at 286 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State.") (quotation and citation omitted). Hipcamp's focus on its engagement with Mitchell ("Hipcamp did not reach out to plaintiff, or his girlfriend, for the transaction leading to the camp stay." (MTD at 3)) ignores the broader engagement Hipcamp has had with Oregon.

Page 10 – FINDINGS AND RECOMMENDATION

### 2. "Arises out of or relates to" Hipcamp's forum-related activities

The second requirement for specific subject matter jurisdiction presents a "nexus" question: Marshall must establish that the claims are ones that "arise out of or relates to" the defendant's "forum-related activities," or, as the Supreme Court has phrased it, that "a plaintiff's claims must arise out of or relate to the defendant's contacts with the forum." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 983 (9th Cir. 2021) (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019-20 (9th Cir. 2002), and *Ford*, 141 S. Ct. at 1026). Importantly, the Supreme Court announced in *Ford* that "'arise out of' and 'relate to' are alternatives: for a claim to arise out of a defendant's forum contacts requires causation, while a claim can relate to those contacts, even absent causation, where, for example, 'a company … serves a market for a product in the forum State and the product malfunctions there.'" *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 504-05 (9th Cir. 2023) (quoting *Ford*, 141 S. Ct. at 1026-27).

Marshall, whose burden it is to establish the nexus requirement, asserts that among the several causes of the injuries he alleges, Hipcamp was negligent in "encouraging, promoting, and/or allowing the use of the Property and the Camping Site, including the use of the same up to and over the cliff." (Compl. ¶ 19.) In Marshall's view, his claims "arise out of or relate to" Hipcamp's contacts with Oregon because Hipcamp encouraged and promoted what he alleges were dangerous conditions on the campsite, and that promotion and encouragement occurred in Oregon when Mitchell booked the campsite.

Hipcamp responds that, even if one argues that "the accident arose from co-defendant Mr. Epling posting his campsite for rent, … the practical analysis concerns whether [Mitchell's] fortuitous location in Oregon when booking the trip is what led to his injury." (Mot. to Dismiss

at 3). That argument has two problems. First, as established above, because of Hipcamp's significant engagement with the Oregon market, there was nothing fortuitous about Mitchell booking the campsite in Oregon. Second, the promotion and encouragement allegation is aimed, in part, at the role of Hipcamp's website. That allegation is "related to" his claims, even if Marshall cannot pass the "but for" causation test because he was injured on the campsite in Washington.[4]

### 3. Reasonableness

With Marshall meeting his burden of showing that Hipcamp has satisfied the purposeful availment and nexus requirements for specific jurisdiction, the burden shifts to Hipcamp to "present a compelling case" that the exercise of jurisdiction in Oregon would not be reasonable. *Burger King*, 471 U.S. at 476-78. To evaluate reasonableness, the court uses a seven-factor balancing test that weighs: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in

---

[4] The court need not decide the "arose out of" alternative to establish a nexus. In any event, the Ninth Circuit has clarified that "but for" causation is not required:

> We clarify that our precedents permit but do not require a showing of but-for causation to satisfy the nexus requirement. *See*, *e.g.*, *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993) (applying "arises out of or related to" test). A narrower test is foreclosed by the Supreme Court's recent decision in *Ford Motor*, 141 S. Ct. at 1026. In that case, the Supreme Court emphasized that a strict causal relationship is not required. *See id.* ("None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do.").

*Ayla*, 11 F.4th at 983 n.5.

adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Freestream Aircraft*, 905 F.3d 597 at 607 (citing *Paccar Int'l, Inc. v. Com. Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1064-65 (9th Cir. 1985)).

When considering those factors, two critical aspects of Marshall's case counsel against exercising jurisdiction in Oregon. First, to prove the encouragement and promotion allegation, Marshall must first establish that the campsite has a dangerous condition. That showing depends on an application of Washington negligence and premises liability law as well as witnesses and other evidence located in Washington. Second, the encouragement and promotion allegation is only one among eight allegations of negligence. The seven other allegations concern the dangerous conditions of the campsite, and Marshall alleges that Hipcamp, in addition to Epling and Go River, is liable for them. Hipcamp must defend itself against those allegations.

Given those circumstances, the strength of four of those factors establish that there is a compelling case that exercising jurisdiction over Hipcamp in Oregon is unreasonable. First, because the bulk of Marshall's allegations concern negligence with respect to the Washington-located site of the injury, a Washington forum has a much greater interest than Oregon in adjudicating those allegations. *See Freestream*, 905 F.3d at 608 (weighing interest of different state forums). Second, given that witnesses and evidence for the alleged injury are located mostly in Washington, the most efficient judicial resolution of those allegations would occur in Washington. *See Menken v. Emm*, 503 F.3d 1050, 1061 (9th Cir. 2007) (efficient judicial resolution factor depends "primarily [on] where the witnesses and the evidence are likely to be located"). Third, because Washington negligence and premises liability law apply to the

allegations concerning the campsite and property, there is a risk that jurisdiction in this district conflicts with Washington's sovereignty. Finally, because Hipcamp has acknowledged that it would be subject to Washington's jurisdiction and Go River and Epling are domiciled in Washington, Washington would have personal jurisdiction over all defendants, including Hipcamp. Washington is therefore an alternative forum.

The remaining factors do not strongly favor Marshall. It is true that Oregon is an important forum for Marshall—he resides in Oregon, and he has an Oregon attorney. Still, Washington is not far from where he lives. Marshall could have filed this case in the Western District of Washington or Skamania County Superior Court, the latter being an hour's drive from Portland. And the Ninth Circuit does not give this factor much weight. *See Freestream*, 905 F.3d at 609. As for the burden on Hipcamp defending its case in Oregon, "modern advances in communications and transportation," *Panavision, Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998), do not make defending the case in Oregon particularly burdensome. As for purposeful interjection into Oregon, although the court has concluded that Hipcamp purposefully availed itself of the privileges of the state, Hipcamp has not gone so far as to own any Oregon properties itself, have employees who work in Oregon, or have any offices in Oregon. This factor does not weigh heavily against Hipcamp.

All told, the seven-factor balancing test weighs enough in Hipcamp's favor to conclude that this district's jurisdiction over it would be unreasonable. This court therefore does not have specific personal jurisdiction over Hipcamp in Oregon for this action.

\ \ \ \ \

\ \ \ \ \

C.   *Transfer*

A district court that lacks jurisdiction may transfer the case to a district where jurisdiction is proper and would serve the interests of justice. 28 U.S.C. § 1631. A court may consider sua sponte whether a case should be transferred under § 1631. *Pfister v. Selling Source, LLC*, 931 F. Supp. 2d 1109, 1119 (D. Nev. 2013) (citing *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990)). A § 1631 transfer requires that (1) the transferee court must have been able to exercise jurisdiction on the date the action was filed, (2) the transferor court must lack jurisdiction, and (3) the transfer serves the interests of justice. *Fisher v. Quantas Airways Ltd.*, 521 F. Supp. 3d 847, 862 (D. Ariz. 2021) (simplified). Because the court has already determined that Hipcamp is not subject to personal jurisdiction for this action, the court analyzes the first and the third requirements.

As for § 1631's first condition, the Western District of Washington could have exercised jurisdiction on the date this action was filed because the property where Marshall was injured is in the Western District of Washington. During oral argument, defense counsel stated that they would not have challenged personal jurisdiction had this case been filed in that district. Further, transferring this case would serve the interests of justice. A transfer is typically in "the interest of justice" because "dismissal of an action that could be brought elsewhere is 'time consuming and justice-defeating.'" *See Cruz-Aguilera v. I.N.S.*, 245 F.3d 1070, 1074 (9th Cir. 2021) (quoting *Miller*, 905 F.2d at 262). Both parties also stated that, if personal jurisdiction was found lacking in this district, they were amenable to litigating this case in the Western District of Washington during oral argument. Because the three conditions of § 1631 are met, the court recommends that this case be transferred to the Western District of Washington.

Page 15 – FINDINGS AND RECOMMENDATION

## CONCLUSION

For the above reasons, Hipcamp's motion to dismiss (ECF No. 5) should be GRANTED. The court recommends that this case be transferred to the Western District of Washington.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a District Judge. Objections, if any, are due within fourteen days. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within fourteen days. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED: November 8, 2023

_____
JEFF ARMISTEAD
United States Magistrate Judge