UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JACOB MARSHALL,<br><br>            Plaintiff,<br>v.<br><br>HIPCAMP INC., et al.,<br><br>            Defendants. | Case No. 3:23-cv-06156-TLF<br><br>ORDER GRANTING MOTION TO COMPEL ARBITRATION |

This matter comes before the Court on defendant Hipcamp, Inc.'s motion to compel arbitration. Dkt. 31. Plaintiff opposes the motion. Dkt. 34. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 42.

BACKGROUND

**I.    Facts**

Defendant Hipcamp, Inc. ("Hipcamp") hosts a website and mobile app where users can connect with private landowners who have space, campsites, RV spaces, or cabins for use. Dkt. 31 at 4. To use the services of Hipcamp and book a campsite, users must create an account and agree to Hipcamp's Terms of Use. *Id*.

In 2019 plaintiff Jacob Marshall's romantic partner, Andrea Mitchell, enrolled as a Hipcamp user. *Id*. In 2020, plaintiff enrolled as a Hipcamp user. *Id*. To enroll as a

Hipcamp user, users are required to agree to Hipcamp's Terms of Use (the "Terms of Use"). *Id*. In relevant part, the Terms of Use contain the following provisions:

> **THE TERMS OF USE INCLUDE A CLASS ACTION WAIVER AND REQUIRE BINDING ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES, RATHER THAN JURY TRIALS.** Dkt. 33-1 at 2.
>
> 18.8 **Arbitration Agreement; Class Waiver; Waiver of Trial by Jury.** Please read this Section ("**Arbitration agreement**") carefully. It is part of your contract with Hipcamp and affects your rights. It contains procedures for MANDATORY BINDING ARBITRATION AND A CLASS ACTION WAIVER.
>
> (a) Applicability of Arbitration Agreement. All claims and disputes (excluding claims for injunctive or other equitable relief as set forth below) in connection with the Terms or the use of any product or service provided by Hipcamp that cannot be resolved informally or in small claims court shall be resolved by binding arbitration on an individual basis under the terms of this Arbitration Agreement. This Arbitration Agreement applies to you and Hipcamp, and to any subsidiaries, affiliates, agents, employees, predecessors in interest, successors, and assigns as well as all authorized or unauthorized users or beneficiaries of services or goods provided under the Terms.
>
> (b) Notice Requirement and Informal Dispute Resolution. Before either party may seek arbitration, the party must first send to the other party a written Notice of Dispute ("**Notice** ") describing the nature and basis of the claim or dispute, and the requested relief. A Notice to Hipcamp should be sent to: support@hipcamp.com. After the Notice is received, you and Hipcamp may attempt to resolve the claim or dispute informally. If you and Hipcamp do not resolve the claim or dispute within 30 days after the Notice is received, either party may begin an arbitration proceeding. The amount of any settlement offer made by any party may not be disclosed to the arbitrator until after the arbitrator has determined the amount of the award, if any, to which either party is entitled.
>
> . . . .
>
> (f) Waiver of Jury Trial. THE PARTIES HEREBY WAIVE THEIR CONSTITUTIONAL AND STATUTORY RIGHTS TO GO TO COURT AND HAVE A TRIAL IN FRONT OF A JUDGE OR A JURY, instead electing that all claims and disputes shall be resolved by binding arbitration under this Arbitration Agreement. Arbitration procedures are typically more limited, more efficient and less costly than rules applicable in court and are subject to very limited review by a court. In the event any litigation should arise between you and Hipcamp in any state or federal court in a suit to vacate or enforce an arbitration award or otherwise, YOU AND HIPCAMP WAIVE ALL

RIGHTS TO A JURY TRIAL, instead electing that the dispute be resolved by a judge.

Dkt. 33-1 at 9, Ex. 3.

On May 3, 2021, Ms. Mitchell registered for the campsite. Dkt. 1-1 at 4. As a user of the services of Hipcamp, Ms. Mitchell was required to click through and accept the Hipcamp Terms of Use as part of the booking process. Dkt. 31 at 5. Ms. Mitchell invited Hipcamp user Jake Marshall to the reservation and he accepted the invitation. *Id*. On May 8, 2021, Ms. Mitchell, Mr. Marshall, and the other individuals in their group checked in and began using the property Ms. Mitchell had reserved. Dkt. 1-1 at 5. During the evening, Mr. Marshall woke up and upon stepping out of his tent he fell 80 feet, sustaining serious injuries. *Id*.

II.     **Procedural History**

On November 14, 2022 Mr. Marshall commenced this action in the Circuit Court of Multnomah County, Oregon. Dkt. 1-1. On December 13, 2022 Hipcamp removed the action to the District of Oregon. Dkt. 1. On December 16, 2022, Hipcamp filed a Motion to Dismiss for Lack of Jurisdiction (Dkt. 5) and a Motion to Compel Arbitration (Dkt. 6) in the District of Oregon.

On November 8, 2023, Magistrate Judge Jeff Armistead issued Findings and Recommendations, later adopted on December 12, 2023 by District Judge Adrienne Nelson (Dkt. 24), that Hipcamp's Motion to Dismiss should be granted and that the case should be transferred to the Western District of Washington. Dkt. 22. Because Judge Armistead determined that the District of Oregon lacked jurisdiction, he did not address the Motion to Compel Arbitration. *Id*. at 2.

On December 15, 2023 the case was transferred from the District of Oregon to this Court. Dkt. 25. On January 10, 2024, Hipcamp re-filed in its entirety the Motion to Compel Arbitration. Dkt. 31. Mr. Marshall responded to the motion and Hipcamp filed a reply. Dkts. 34, 40. The Court heard oral argument on March 14, 2024. Dkt. 49. On March 28, 2024, the Court requested supplemental briefing from the parties, which they respectively provided on April 26, 2024. Dkts. 52, 53.

# DISCUSSION

## I. Legal Standard

Under the Federal Arbitration Act (FAA), arbitration agreements involving interstate commerce are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Section 2 of the FAA creates a policy favoring enforcement of agreements to arbitrate." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008). Arbitration agreements are a matter of contract, and courts must "enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). As such, they may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Id*. (quoting *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

In a motion to compel arbitration the court must determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F. 3d 1126, 1130 (9th Cir. 2000). If the answer to both questions is yes, the court must "enforce the arbitration agreement in accordance with its terms." *Id*.

Courts "rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure" on a motion to compel arbitration because "the district court's order compelling arbitration 'is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.'" *Hansen v. LMB Mortgage Services, Inc.*, 1 F.4th 667, 672 (9th Cir. 2021) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n.9 (3d Cir. 1980)). "Once a district court concludes that there are genuine disputes of material fact as to whether the parties formed an arbitration agreement, the court must proceed without delay to a trial on arbitrability." *Id.* at 672.

## II.   Analysis

### A.   Governing law

In determining whether there is an agreement to arbitrate, courts generally must apply "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Therefore, the Court must first determine which state's law to apply. The Court, sitting in diversity, applies the forum state's choice of law rules.[1] *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. Of Texas*, 571 U.S. 49, 65 (2013). The parties agree that Washington's choice of law principles apply here. *See* Dkt. 52 at 3; Dkt. 53 at 1.

Under Washington law, the threshold question is whether there is an actual conflict with another state's law. *Burnside v. Simpson Paper Co.*, 123 Wn. 2d 93, 103 (1994). "An actual conflict of law exists where the result of an issue is different under the

---

[1] Because this case was transferred for lack of jurisdiction "the action shall proceed as if it had been filed in . . . the court to which it is transferred." 28 U.S.C. § 1631. Accordingly, it is appropriate to apply Washington's, rather than Oregon's, choice of law rules.

ORDER GRANTING MOTION TO COMPEL
ARBITRATION - 5

laws of the interested states." *Woodward v. Taylor*, 184 Wn. 2d 911, 917 (2016). If there is no actual conflict, the Court applies "the presumptive local law." *Erwin v. Cotter Health Centers*, 161 Wn. 2d 676, 692 (2007) (quoting *Seizer v. Sessions*, 132 Wn. 2d 642, 648-49 (1997)).

Here the three state law principles raised by the parties are contract formation, equitable estoppel, and unconscionability.[2]

1. Contract Formation

As for contract formation, there is no actual conflict. *U.S. ex rel. TBH & Associates, LLC v. Wilson Const. Co.*, 965 F. Supp. 2d 1215, 1220 (D. Or. 2013) (although Oregon and Washington approach to contract interpretation varies slightly, they would ultimately reach similar results); *Jackson v. Amazon, Inc.*, 559 F.Supp. 3d 1132, 1138 (S.D. Cal. 2021) (Washington and California contract formation laws are "materially the same"), *aff'd*, 65 F.4th 1093 (9th Cir. 2023).

2. Equitable Estoppel

As for equitable estoppel, in California a nonsignatory may be bound to arbitrate (1) "when he or she asserts claims that are dependent upon, or inextricably intertwined with, the underlying contractual obligations of the agreement containing the arbitration clause" or (2) "when [a nonsignatory] receives a direct benefit from a contract containing

---

[2] The Court requested supplemental briefing on this issue because the Motion was refiled in its entirety and did not discuss the applicability of Washington law. The parties agree that no conflict exists between the three states. *See* Dkt. 52 at 5, Dkt. 53 at 3. Hipcamp argues that because no conflict exists, the Governing Law provision of the Terms of Use should apply, but this is not the approach Washington courts take. *See Erwin*, 161 Wn. 2d at 692. Additionally, because the parties disagree whether the Terms of Use govern this dispute, this would require the Court to engage in circular reasoning which is unnecessary because Oregon, California, and Washington law dictate the same outcome. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).

ORDER GRANTING MOTION TO COMPEL
ARBITRATION - 6

an arbitration clause." *Pillar Project AG v. Payward Ventures, Inc.*, 64 Cal. App. 5th 671, 677-78 (2021).

Washington courts apply equitable estoppel to compel nonsignatories to arbitrate where the nonsignatory "knowingly exploits" the contract containing the arbitration agreement. *Townsend v. Quadrant Corp.*, 173 Wn. 2d 451, 461 (2012).

Oregon courts have similarly determined that a nonsignatory defendant could invoke an arbitration clause in a case brought against them by a signatory when the terms of the arbitration agreement "[are] broad enough to plausibly encompass plaintiff's claims against the individual defendants." *Livingston v. Metro. Pediatrics*, LLC., 234 Or. App. 137, 149-50 (2010). Although Oregon courts have not addressed whether a nonsignatory could be bound to arbitrate by a signatory, federal district courts have assumed without deciding that Oregon courts would compel a nonsignatory to arbitrate where "the nonsignatory 'knowingly exploits' the benefits of the agreement and receives benefits flowing directly from the agreement." *Goergen v. Black Rock Coffee Bar, LLC*, 2023 WL 1777980, at *10 (D. Or. Feb. 6, 2023) (citing *Eclipse Consulting, Inc. v. BDO USA, LLP*, 2018 WL 6735085, at *6 (D. Or. Nov. 13, 2018)).

Here, each of these approaches is slightly different, yet they would result in the same holding: a nonsignatory plaintiff will be equitably estopped from avoiding the arbitration provision of the agreement if their claim relies on the terms of the contract. Accordingly, there is no actual conflict between each state's approach.

3.  Unconscionability

Finally, there is also no actual conflict between Washington's, Oregon's, and California's unconscionability analysis. *See Chalk v. T-Mobile USA, Inc.,* 560 F.3d 1087,

ORDER GRANTING MOTION TO COMPEL
ARBITRATION - 7

1094 n. 4 (9th Cir. 2009) (Oregon and California Courts take a similar approach to the unconscionability analysis); *Wiseley v. Amazon.com, Inc.*, 709 Fed. Appx. 862, 863 (9th Cir. 2017) ("Washington's and California's consumer protection laws and protections against unconscionable contracts appear to be substantially similar.").

The Court therefore will not conduct a conflict of law analysis and instead will apply Washington law, to the extent possible. *Erwin*, 161 Wn. 2d at 692.

B. Contract Between Hipcamp and Mr. Marshall

The threshold question is whether a contract exists between Hipcamp and Mr. Marshall. The parties do not dispute that Mr. Marshall had an account – a contract he entered into in 2020 – which made him a registered user of Hipcamp's services at the time of the incident. *See* Dkt. 33-1 at 17-21, Ex. 6; Dkt. 34 at 6-7. Hipcamp asserts that in order to enroll as a Hipcamp user, Mr. Marshall would have had to agree to Hipcamp's "terms" which were noted by the following language: "By signing up, I agree to Hipcamp's terms and privacy policy." Dkt. 33 at 3. The parties dispute whether by signing up as a Hipcamp user, Mr. Marshall was on notice of the arbitration agreement because the Terms of Use were part of the user agreement that he signed – a contract he entered into separately from the booking of the reservation agreed to by Ms. Mitchell.

Contract formation requires mutual assent. *Reichert v. Rapid Investments, Inc.*, 56 F.4th 1220, 1227 (9th Cir. 2022) (applying Washington law). Mutual assent in the online context "turns on whether the consumer had reasonable notice of the terms of service agreement." *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019) (applying Washington law). Online contracts have been categorized as "clickwrap" or "browsewrap" agreements. *Id*. at 1220. Contracts are considered to be "clickwrap"

ORDER GRANTING MOTION TO COMPEL
ARBITRATION - 8

agreements when "a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed." *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (applying California law). "Clickwrap" agreements are routinely considered enforceable because the parties have received constructive notice of the terms. *Id*.

In a "browsewrap" agreement "a website offers terms that are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website." *Id*. These agreements are not as commonly enforced "because consumers are frequently left unaware that contractual terms were even offered, much less that continued use of the website will be deemed to manifest acceptance of those terms." *Id*.

Hipcamp argues that the agreement in this case was a "clickwrap" agreement, noting the fact that Mr. Marshall and Ms. Mitchell were given the opportunity to click on the hyperlinks for the Terms of Use before they signed up as users or booked the camping trip. Dkt. 31 at 9. Mr. Marshall argues that the agreement between Mr. Marshall and Hipcamp in 2020 was actually a "browsewrap" agreement because, unlike "clickwrap" agreements, users signing up with Hipcamp are not required to click an "I agree" box after being presented with Terms of Use. Dkt. 34 at 7.

The agreement in this case falls into a third category of agreement, known as a "sign-in wrap" agreement. The agreement in *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829 (S.D.N.Y. 2012), which Hipcamp argues is similar to this case, has been characterized in this way. *See Berkson v. Gogo*, 97 F. Supp. 3d 359, 398 (E.D.N.Y 2015). A "sign-in wrap" agreement is between a" clickwrap" and a "browsewrap"

ORDER GRANTING MOTION TO COMPEL
ARBITRATION - 9

agreement – instead of clicking that they have read the terms of use, individuals affirm that by signing up they agree to be bound by the terms of use. *Berman,* 30 F.4th at 866 (J. Baker, concurring) (citing *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444 (2021)).

      Here, the "Join Hipcamp" screen, as it would have appeared at the time Mr. Marshall registered for an account in 2020 stated, in grey lettering on a white background "By signing up, I agree to Hipcamp's terms and privacy policy" below a large black button that stated, "Continue with Apple," a large blue button that stated "Join with Facebook," and a large green button that stated "Sign up with your email address." Dkt. 33-1 at 16, Ex. 5. Mr. Marshall does not argue that the hyperlink to the Terms of Use was inconspicuous, rather, he argues that the act of setting up an account is insufficient evidence that he manifested assent to the terms of use. Dkt. 34 at 8. The Court must determine whether the agreement in this case was presented on Hipcamp's website in a way that was sufficient to put a reasonably prudent user on inquiry notice of the terms. *Meyer v. Uber Techs., Inc.,* 868 F.3d 66, 74-75 (9th Cir. 2017).

      Here, the sign up page is insufficient to have put a reasonably prudent user on notice that they were bound by the terms of use. Although the statement below the buttons stated, "[b]y signing up, I agree to Hipcamp's terms and privacy policy," the screen does not make the hyperlink obvious; the Terms were not underlined, not set forth in a different color to attract the reader's attention, not bolded, and were not in all-caps. *See Meyer*, 868 F.3d at 78 (considering whether design of screen and language used provided reasonable notice). Importantly, the buttons that users were prompted to push are not the "mechanism for manifesting assent" as users would then have to enter their information and enroll in order to complete sign up. *Id*. "[E]ven close proximity of

the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014).

Therefore, the Court concludes as a matter of law, there is no genuine dispute of material fact; Mr. Marshall did not as a reasonably prudent user, have sufficient notice by creating an account with Hipcamp, that he would be bound by the terms of use. Accordingly, Mr. Marshall did not unambiguously manifest assent to the Terms of Use and the 2020 agreement that Mr. Marshall entered into by registering as a Hipcamp user is not sufficient to bind him to Hipcamp's arbitration clause in the Terms of Use.

C. Equitable Estoppel

In determining whether nonsignatories to an arbitration agreement are bound by the agreement, "general contract and agency principles apply," including, "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009) (internal citations omitted). Equitable estoppel prevents a party from avoiding the terms of a contract while also enjoying the benefits of the contract. *Id*. at 1046.

The parties agree that by signing up for a campsite, Ms. Mitchell was subject to the Terms of Use. Hipcamp argues that but for Ms. Mitchell's use of Hipcamp's services for booking the campsite, Mr. Marshall would not have been present on, or allowed to use, the property.

Under Washington law, "nonsignatories are not bound by arbitration clauses" as a general rule. *Townsend v. Quadrant Corp.*, 173 Wn. 2d 451, 460 (2012). Equitable estoppel may apply in the context of a nonsignatory to an agreement to arbitrate – if a

ORDER GRANTING MOTION TO COMPEL
ARBITRATION - 11

nonsignatory "despite never having signed the agreement, 'knowingly exploits' the contract in which the arbitration agreement is contained." *Townsend,* at 461.

      Here, Mr. Marshall brings claims of tort-premises liability negligence, and gross negligence premised upon the location, maintenance, and promotion of the campsite. Plaintiff argues the Terms of Use were not relied upon as the basis for claims in the Complaint – and that he does not "necessarily invoke the terms of the contract to support his claims." Dkt. 34 at 6. Yet, if plaintiff's girlfriend had not signed up for the campsite, and thereby agreed to the terms of use in her contract with Hipcamp, plaintiff would not have been there on the date of the events alleged in the complaint; he obtained a direct benefit – going camping with his partner at this campsite – as a result of his partner's contract with Hipcamp.

      This case is factually similar to situations where Courts have determined a nonsignatory is bound by equitable estoppel to an agreement to arbitrate in the context of negligence claims that depend on a contract signed by someone other than the person who obtained the direct benefit of purchasing a product or service under the contract. *See Hofer v. Emley,* 2019 WL 4575389 (N.D. Cal. Sept. 20, 2019) (passenger of rental car received the benefit of riding in the rental car through his brother's assent to rental car application and was thereby estopped from avoiding arbitration on negligence claim); *see also Nicosia v. Amazon.com, Inc.,* 384 F. Supp. 3d 254, 274-275 (E.D.N.Y. 2019) (applying direct benefits estoppel, and granting a motion to compel arbitration under the arbitration agreement entered into by plaintiff's spouse; concerning tort lawsuit brought by a person who ordered a diet product from Amazon but was using his spouse's log-in and password); *see also Atencio v. Bird Rides Inc.*, 2023 WL

ORDER GRANTING MOTION TO COMPEL
ARBITRATION - 12

8168955 (C.D. Cal. Nov. 3, 2023) (plaintiff who rode rental scooter rented by her son equitably estopped from avoiding arbitration by bringing claims including negligence which were "predicated on violations of a duty that Bird owed as the lessor of the defective scooter.").[3]

Therefore, by gaining a benefit under the contract, Mr. Marshall "knowingly exploits" the contract between Ms. Mitchell and Hipcamp and is equitably estopped from avoiding the arbitration provision.

D. Applicability to the claims at issue

Next the Court must determine whether Mr. Marshall's negligence claim falls within the scope of the arbitration agreement. Under Washington law, the Court makes this determination by reviewing the language of the arbitration agreement. *In re Marriage of Pascale*, 173 Wn. App 836, 844 (2013).

Mr. Marshall argues that the arbitration agreement does not encompass the claims at issue. Dkt. 34 at 8-12. In this case, the arbitration clause states that it applies to

> [a]ll claims and disputes . . . in connection with the Terms <u>or the use of any product or service provided by Hipcamp</u> that cannot be resolved informally or in small claims court shall be resolved by binding arbitration on an individual basis under the terms of this Arbitration Agreement. This Arbitration Agreement applies to you and Hipcamp, <u>and to any . . . authorized or unauthorized users or beneficiaries of services or goods</u> provided under the Terms.

---

[3] Courts applying Washington law have determined that equitable estoppel does not apply where plaintiffs bring claims based on statutory rights, rather than rights under the contract. However, these cases are distinguishable from the instant case because plaintiff necessarily relied on his girlfriend's reservation under the contract for his permission to camp on the property and does not rely on statutory grounds. *See B.F. by & through Fields v. Amazon*, C19-910-RAJ-MLP, 2019 WL 9364164 (W.D. Wash. Oct. 21, 2019) (collecting cases), *report and recommendation adopted sub nom. B.F. by & through Fields v. Amazon.com Inc.*, C19-910 RAJ-MLP, 2020 WL 1808908 (W.D. Wash. Apr. 9, 2020), *aff'd sub nom. B.F. v. Amazon.com Inc*, 858 Fed. Appx. 218 (9th Cir. 2021).

ORDER GRANTING MOTION TO COMPEL
ARBITRATION - 13

Dkt. 33-1 at 9, Section 18.8 (a) (emphasis added). As the Court has already determined, plaintiff's dispute relies on a duty allegedly owed under the Terms of Use. Therefore, plaintiff's claims against Hipcamp fall within the scope of the arbitration agreement.

### E. Unconscionability

Under Washington law an agreement to arbitrate may be voided if it is determined to be either procedurally or substantively unconscionable. *Burnett v. Pagliacci Pizza, Inc.*, 196 Wn. 2d 38, 54 (2020). Procedural unconscionability applies to the circumstances surrounding contract formation, including "(1) the manner in which the contract was entered, (2) whether [plaintiff] had a reasonable opportunity to understand the terms of the contract, and (3) whether the important terms were hidden in a maze of fine print." *Id*. Substantive unconscionability looks at "whether the provision is shocking to the conscience, monstrously harsh, and exceedingly calloused" to determine "if a contractual provision is one-sided or overly harsh." *Id*. at 57. The burden of proving unconscionability lies on the party opposing arbitration. *Zuver v. Airtouch Communications, Inc.*, 153 Wn. 2d 293, 302 (2004).

Plaintiff argues that the arbitration agreement is unconscionable in both respects. Dkt. 34 at 12. He argues that it is procedurally unconscionable because of the unequal bargaining power, the absence of an opportunity to negotiate, and the lack of meaningful choice. *Id*. He argues that it is substantively unconscionable because Hipcamp drafted the Terms of Use to so heavily favor themselves so that the cost of arbitration would greatly exceed any potential award. *Id*.

While the Court has determined that signing up as a user did not sufficiently put plaintiff on notice because the Terms of Use were not clearly hyperlinked, the screen to book a campsite, at the time Ms. Mitchell booked the campsite, looked quite different.[4] The book now screen on the web browser, and mobile app both read: "By clicking on Book now, you agree to pay the total amount shown, and you agree to the host's Strict Cancellation Policy, Hipcamp's Terms of Service and Hipcamp's privacy Policy." Dkt. 40 at 4-5. Here, not only did the language refer to the "Terms of Service" rather than just the "Terms," but the phrase was actually either in green or underlined, depending on whether users booked on the mobile app or in a web browser. Additionally, the phrase appears on the screen below the button "Book now," thereby communicating that by clicking the button, users are manifesting their assent. *See Meyer v. Uber Techs., Inc.,* 868 F.3d 66, 78 (9th Cir. 2017) (Where notice of terms is provided simultaneously to enrollment, "a reasonably prudent smartphone user would understand that the terms were connected to the creation of a user account.").

Therefore, the process of agreeing to the Terms of Use when booking a campsite was not procedurally unconscionable.

In arguing substantive unconscionability, Mr. Marshall refers to a provision of the contract that would cap liability at fifty dollars. Dkt. 24 at 12. Hipcamp does not respond to this assertion in briefing, but at oral argument stated that this is not a full reading of the terms. Plaintiff does not raise any argument regarding the unconscionability of the arbitration agreement and therefore has failed to satisfy his burden. The applicability of

---

[4] The Court has determined that plaintiff is equitably estopped from avoiding the contract because he relies on the duty owed under the contract that Ms. Mitchell entered into by booking the campsite through Hipcamp's platform. Therefore, the Court considers the unconscionability of that contract.

ORDER GRANTING MOTION TO COMPEL
ARBITRATION - 15

the liability cap provision is a matter for the arbitrator to decide. "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 479 (9th Cir. 2024) (quoting *Thompkins v. 23andMe, Inc.,* 840 F.3d 1016, 1032 (2016)) (internal quotations omitted).

## CONCLUSION

For the reasons stated herein, the Court hereby orders Hipcamp's motion to compel arbitration is GRANTED. This matter shall be submitted to arbitration. This matter is stayed. *See Smith v. Spizzirri*, 22-1218, 2024 WL 219872 (U.S. May 16, 2024).

The parties are ORDERED to provide joint status reports with updates at least every six months, to inform the Court of their progress and results of arbitration, and immediately notify the Court if a resolution is achieved at arbitration.

Dated this 22nd day of May, 2024.

Theresa L. Fricke
United States Magistrate Judge